UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| MARC ABRAMS, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DELL INC., et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:06-cv-00726-SS<br><br><u>CLASS ACTION</u> |
| STEVE KLEIN, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DELL INC., et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:06-cv-00770-SS<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MARC ABRAMS' MOTION TO APPOINT THE INSTITUTIONAL INVESTOR
GROUP AS LEAD PLAINTIFF AND TO APPROVE LEAD PLAINTIFF'S
CHOICE OF CO-LEAD COUNSEL**

Marc Abrams respectfully submits this memorandum of law in support of the Institutional Investor Group's motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, and for approval of its selection of Patrick J. Coughlin of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and Joe Kendall of Provost & Umphrey Law Firm, LLP ("Provost & Umphrey") as co-lead counsel for the class.[1]

## I.    STATEMENT OF THE MATTER BEFORE THE COURT

Presently pending in this district are two related securities class action lawsuits (the "Actions") (*Abrams v. Dell Inc.*, No. 1:06-cv-00726-SS (W.D. Tex.), filed Sept. 13, 2006 and *Steve Klein v. Dell. Inc.*, No. 1:06-cv-00770-SS (W.D. Tex.), filed Sept. 27, 2006), on behalf of persons who purchased or otherwise acquired securities of Dell Inc. ("Dell" or the "Company") between February 14, 2003 and September 8, 2006, inclusive (the "Class Period"). These Actions are brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.[2] *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).

As soon as practicable after its decision on consolidation, the Court is to appoint as lead plaintiff the "person or group of persons" with the largest financial interest in the litigation that otherwise satisfies the requirements of Fed. R. Civ. P. 23. *See generally Krim v. pcOrder.com, Inc.*, No. A 00 CA 776 SS, 2001 U.S. Dist. LEXIS 6592, at *10 (W.D. Tex. May 14, 2001) (Sparks, J.).

---

[1]    The Institutional Investor Group is comprised of two large, sophisticated institutional investors: (i) Amalgamated Bank, as Trustee for the Longview Collective Investment Fund; and (ii) Wolverhampton City Council, Administering Authority for the West Midlands Metropolitan Authorities Pension Fund.

[2]    Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). On October 13, 2006, the parties filed an Agreed Order Regarding Consolidation and Schedule.

Here, the Institutional Investor Group should be appointed as lead plaintiff because it: (1) timely filed its motion; (2) to its knowledge, has the largest financial interest in this litigation; and (3) will adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Furthermore, the Institutional Investor Group's selection of Provost & Umphrey and Lerach Coughlin to serve as co-lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, MDL 1446, Civ. Action No. H-01-3624, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006) ("[Lerach Coughlin] is comprised of probably the most prominent securities class action attorneys in the country.") (Harmon, J).

## II.    STATEMENT OF FACTS

Dell is the world's largest computer maker and marketer, commanding 20% of the global market and 32% of the American market. The Company has no physical stores. Dell conducts all sales directly to consumers through telephone and online sales. Having achieved a 20% cost advantage over other personal computer ("PC") manufacturers and a 25% price advantage over other PC sellers by 2000, Dell had clearly established itself as the low-cost and low-price leader.

However, by January 2003 Dell was watching its competitive advantage dissipate as its lack of a physical sales channel became a liability and its ability to squeeze suppliers for price concessions disappeared. Dell's efficient supply chain, low cost of sales, and ability to hold just-in-time inventory were replaced by inflexible component costs and decreasing profit margins. As a result, by January 2003, Dell's cost advantage over other PC makers had crumbled to 10% and its price advantage had narrowed to just 5%.

Nonetheless, throughout the Class Period defendants concealed the true status of Dell's declining business model and began unsuccessful forays into the server, storage and printer markets to camouflage its declining market share and sales growth. By January 2004, defendants were promising Dell would double its 2002 annual sales to $60 billion by January 2006 through a 15%

annual increase in sales.  Though Dell never even achieved a $60 billion year during the Class Period – defendants would raise that projection to $80 billion in mid-2005 and then to an astounding $100 billion in April 2006.  The Company's stock price surged, trading above $42 per share by December 2004.

Meanwhile, defendants were causing Dell to report inflated financial results by misstating the Company's accrual and reserves on its balance sheet.  In August 2005, the SEC began investigating the Company's revenue recognition and accounting practices, but Dell concealed the investigation from investors.  However, unable to maintain the charade, defendants began carving down sales and profits projections and Dell began missing its own revenue, earnings per share ("EPS") and unit sales growth targets, causing significant declines in its stock price.  In order to support the Company's stock price, defendants continued concealing the full extent of Dell's demise and promising a quick turn around.

On August 16, 2006, Dell announced it would be forced to recall over 4 million laptop batteries citing a high combustion risk.  The recall is expected to cost $400 million.  Dell had known about the battery problems for years.  Then, on August 17, 2006 Dell announced its fifth consecutive quarter of disappointing results – again significantly missing its own revenue and EPS projections. Dell's profits fell 51% from the same quarter one year earlier. Instead of the $.32 cents EPS projected, Dell reported a paltry $.22 cents EPS.  The Company also finally revealed the SEC had begun investigating its revenue recognition practices and other accounting practices in August 2005.

Announcing that in connection with its own internal accounting review "the company recently discovered information that raises potential issues relating to certain periods prior to fiscal 2006," defendants disclosed the Company's Audit Committee was undertaking a full review. Kevin Rollins told analysts Dell had not disclosed the investigation for a year, claiming there "was really

no reason to disclose it at that time." On this news the Company's stock declined 9% to a low of $20.65 when NASDAQ trading resumed on August 18, 2006.

Finally, on September 11, 2006 defendants disclosed the Company would not be able to file its interim financial report for its second quarter 2007 and that the U.S. Attorney's Office for the Southern District of New York had served Dell with a subpoena requesting documents concerning its accounting and financial reporting between 2002 and 2006. The Company issued a press release entitled "Dell Will Delay Filing of Form 10-Q," which stated in relevant part:

> Dell Inc. announced today that it is delaying the filing of the Form 10-Q for its fiscal second quarter ended August 4, 2006.
>
> The company said it is unable to file because of questions raised in connection with the previously announced informal investigation by the U.S. Securities and Exchange Commission (SEC) into certain accounting and financial reporting matters and the subsequently initiated independent investigation by the Audit Committee of its board of directors. The company said it plans to file the report as soon as possible.
>
> The investigations have indicated the possibility of misstatements in prior period financial reports, including issues relating to accruals, reserves and other balance sheet items that may affect the company's previously reported financial results. The company is working with the Audit Committee and with the company's independent auditors to determine if any restatements of prior period financial reports will be necessary. "We have not yet reached any conclusion on materiality as to these issues," said Don Carty, chairman of the Audit Committee reviewing the matter. "We are continuing to investigate the matter fully," Carty added.
>
> ***The SEC requests for information have been joined by a similar request from the United States Attorney for the Southern District of New York, who has subpoenaed documents related to the company's financial reporting from 2002 to the present***.
>
> "We are fully cooperating with the investigations and working to resolve any and all issues raised in connection with those investigations as quickly as possible, and we will take any appropriate remedial or corrective actions to address any problems," Chairman Michael Dell said.

Dell's stock price continued declining, with shares trading as low as $20.52 in intra-day trading on September 11, 2006, a decline of more than 50% from its Class Period high in December 2004.

- 4 -

## III.    ARGUMENT

### A.    The Institutional Investor Group Satisfies the PSLRA's Lead Plaintiff Requirements and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(1)-(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here, the relevant notice was published on *BusinessWire* on September 13, 2006.  *See* Affidavit of Joe Kendall in Support of Motion to Appoint the Institutional Investor Group as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Co-Lead Counsel ("Kendall Aff."), Ex. C, Appendix Tab 1, filed concurrently herewith.  Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1. The Institutional Investor Group Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for appointment as lead plaintiff in this matter must do so by November 13, 2006. 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, the Institutional Investor Group timely hereby moves this Court to be appointed lead plaintiff on behalf of all members of the class. The Institutional Investor Group has also duly signed and filed certifications stating their willingness to serve as representative parties on behalf of the class as required by the PSLRA. *See* Kendall Aff., Ex. A, Appendix Tab 1.

### 2. The Institutional Investor Group Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, the Institutional Investor Group suffered substantial losses (approximately $6 million) as a result of its purchases of Dell securities. *See* Kendall Aff., Ex. B, Appendix Tab 1. Upon information and belief, because the Institutional Investor Group's financial interest in this matter is the largest of any competing lead plaintiff movant, it should be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B); *Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *12-*17 (N.D. Tex. Apr. 17, 2002).

### 3. The Institutional Investor Group Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Bell*, 2002 U.S. Dist. LEXIS 6850, at *17-*19. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the lead plaintiff movant. *See Bell*, 2002 U.S. Dist. LEXIS 6850, at *17. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See id*.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See id*. Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical.

The Institutional Investor Group satisfies the typicality requirement of Rule 23 because, just like all other class members, it: (1) purchased or acquired Dell securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. *See Bell*, 2002 U.S. Dist. LEXIS 6850, at *18. Thus, the Institutional Investor Group's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events. *See id*.

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The PSLRA directs the Court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice

of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See*

*Bell*, 2002 U.S. Dist. LEXIS 6850, at *18.

Here, the Institutional Investor Group is an adequate class representative because its interest in aggressively pursuing the claims against defendants is clearly aligned with the interests of the members of the class, who similarly suffered losses because of defendants' false statements to the market. *See id*. Further, there is no antagonism between the Institutional Investor Group's interests and those of the other members of the class and, as demonstrated below, the Institutional Investor Group's proposed lead counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Institutional Investor Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B.    The Institutional Investor Group's Selection of Co-Lead Counsel Should Be Approved

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. In that regard, the Institutional Investor Group, as the presumptively most adequate plaintiff, has selected Provost & Umphrey and Lerach Coughlin to serve as co-lead counsel for the class. Provost & Umphrey and Lerach Coughlin possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Kendall Aff., Ex. D and E, Appendix Tab 1. The Court should approve the Institutional Investor Group's selection of Provost & Umphrey and Lerach Coughlin as Co-Lead Counsel for the class.

## IV.    CONCLUSION

For the foregoing reasons, the Court should appoint the Institutional Investor Group as Lead

Plaintiff and approve its selection of Provost & Umphrey and Lerach Coughlin as co-lead counsel

for the class.

DATED:  November 13, 2006                    Respectfully submitted,

PROVOST & UMPHREY LAW FIRM, LLP
JOE KENDALL
State Bar No. 11260700
WILLIE C. BRISCOE
State Bar No. 24001788


                                 s/ Joe Kendall
                               JOE KENDALL

3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone: 214/744-3000
214/744-3015 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
PATRICK J. COUGHLIN
JAMES I. JACONETTE
STACEY M. KAPLAN
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
G. PAUL HOWES
1111 Bagby, Suite 4850
Houston, TX  77002
Telephone:  713/571-0911
713/571-0912 (fax)

[Proposed] Co-Lead Counsel for Plaintiffs

S:\CasesSD\Dell 06\BRF00036606-LP.doc

- 9 -

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Joe Kendall
JOE KENDALL

PROVOST & UMPHREY LAW FIRM, LLP
JOE KENDALL
State Bar No. 11260700
WILLIE C. BRISCOE
State Bar No. 24001788
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone: 214/744-3000
214/744-3015 (fax)

# Mailing Information for a Case 1:06-cv-00726-SS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mary K. Blasy**
  maryb@lerachlaw.com e_file_sd@lerachlaw.com;nhorstman@lerachlaw.com

- **Willie C. Briscoe**
  wbriscoe@provostumphrey.com provost_dallas@yahoo.com

- **Thomas R. Jackson**
  trjackson@jonesday.com
  jlgraham@jonesday.com;alwilkins@jonesday.com,pjames@jonesday.com

- **Joe Kendall**
  jkendall@provostumphrey.com provost_dallas@yahoo.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Stacey Kaplan**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101