Cash Incentive Plan offered executives up to 10 times what their normal bonus was, leading the reporter to state that "management seems to want a greater payoff for its senior staff."[9]

646.    The Cash Incentive Plan linked "jumbo bonuses" directly to "certain *revenue growth* and *profitability* metrics." Dell 2003 Proxy Statement at 22 (emphasis added).  Amounts earned under the Cash Incentive Plan were calculated annually but were not to be awarded until 2007.  Thus, to receive their "jumbo bonuses," Individual Defendant Schneider and other Dell executives had to continue to meet numbers over an extended period.

647.    Although Michael Dell and Rollins were not eligible themselves, the Cash Incentive Plan gave them the opportunity to focus the attention of other Company executives on revenue metrics.

648.    The first executives to become eligible for the awards, Paul Bell, Rosendo Para, and Joseph Marengi, would receive a cash bonus of nearly $7 million each in 2007, assuming they met their numbers for four years straight.  Over the course of the Class Period, all Dell executives, including Defendant Schneider, began to earn substantial cash-incentive awards.  For fiscal 2004, every Dell executive earned 150% of his annual cash bonus.  For fiscal year 2005, every Dell executive earned 200% of his annual cash bonus.  For fiscal year 2006, every executive earned 250% of his annual cash bonus.[10]

_____

[9] This article, incorporated herein by reference, is publicly available at http://www.cfo.com/article.cfm/3009266?f=search.

[10] In 2005, because the Company achieved its "revenue and profitability goals . . . earlier than projected," Dell implemented another version of the program: the "2006 Long-Term Cash Incentive Program."  *See* Dell 2005 Proxy Statement at 22.

649.    Under the Cash Incentive Plan, Defendant Schneider earned:

- $1,080,000 in 2004;
- $1,644,702 in 2005; and
- $1,345,527 in 2006.[11]

650.    The timing of the changes in Dell's long-term bonus structure was not coincidental. In fiscal 2002, Dell's earnings per share decreased for four straight quarters and year-over-year revenue growth decreased for three quarters. As a result, the Individual Defendants' annual short-term bonuses suffered substantially. In fact, in fiscal 2002 Defendant Michael Dell received only 25% of his target short-term bonus, $347,236, because "the Company's *revenue growth performance* fell short of some of the *aggressive* internal goals established at the beginning of the year." Dell 2002 Proxy Statement at 17 (emphasis added). In contrast, in fiscal year 2003, after the implementation of the new long-term bonus plan that focused attention on revenue, Michael Dell received 174% of his target short-term bonus, which translated into nearly $2.5 million. Dell 2003 Proxy Statement at 18. In fiscal 2002, Rollins received only $243,389 compared with more than $2 million in 2003. Schneider received only $166,731 in fiscal year 2002 compared with $643,507 in 2003. Dell 2004 Proxy Statement at 20.

651.    Immediately after the Individual Defendants experienced these severe reductions in their short-term bonuses, they implemented the 2002 Plan, *which began to link all executive bonuses, both long- and short-term, with "recognized" revenue*.

652.    The CEO and the other Individual Defendants worked closely with the Compensation Committee (the "Committee") to structure Dell's bonus system. However,

---

[11] Because Dell failed to meet its performance goals in 2007, there were no awards under the Cash Incentive Plan. The amounts earned under the plan for previous years will not be paid out until 2008 or 2009. *See* Dell 2007 Proxy Statement at 32.

although the Compensation Committee and the Board reviewed and approved compensation plans, in reality, it was management that dictated them. Indeed, the Committee charter states that it has responsibility for:

> reviewing and approving . . . ***management recommendations regarding all forms of compensation*** to be provided to each executive officer . . . including any perquisites and equity compensation, and salary, ***bonus and equity compensation guidelines for all employees***.

Leadership Development and Compensation Committee Charter (emphasis added).[12] Similarly, the Committee must review ***with management*** and approve "target opportunity levels" and "performance goals." Dell 2007 Proxy Statement at 24-25 (emphasis added). Therefore, the Individual Defendants, as Dell's top management, were aware of, recommended, and/or explicitly approved the changes referenced above.

653. In 2007, the Committee delegated its compensation authority for all non-executive officers to the Company's CEO, Defendant Michael Dell. Under Dell's long-term bonus plans, the Committee always has had the discretion to delegate such authority. The Committee delegated this authority to the CEO throughout the Class Period. Thus, Defendants Rollins and Michael Dell were keenly aware of the effect of the bonus plans on employees because ***they, in fact, were administering the plans***.

654. Under the new bonus plan, Dell management set unrealistic goals for employees and thus encouraged them to manipulate financials. Defendant Michael Dell has acknowledged that Dell's bonus structure placed unrealistic pressure on Company employees. In early 2007,

---

[12] The charter is publicly available at http://www.dell.com/content/topics/global.aspx/corp/governance/en/compensation?c=us&l=en&s=corp.

249